**Michael Dewayne POWELL, Appellant,**

v.

**The STATE of Texas.**

No. PD–0051–05.

Court of Criminal Appeals of Texas.

April 5, 2006.

Susan Kelly Johnson, Waco, for appellant.

Christy Barber, Asst. D.A., Waco, Matthew Paul, State's Attorney, Austin, for state.

KELLER, P.J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined.

In this case, we find that the Court of Appeals failed to give proper deference to a trial court's ruling under Texas Rule of Evidence 403. Consequently, we reverse the appellate court's judgment.

## I. BACKGROUND

### A. Trial

Appellant was charged with evading arrest or detention in a motor vehicle. In an opening statement made before the State's case-in-chief, defense counsel stated that appellant's defense would be that he was not the person who evaded detention that day:

> What has happened, you will hear, without question, was that this Defendant, Michael Powell[,] was absolutely in that vehicle, which was not his vehicle, it was his girlfriend, or whatever. He was in that vehicle earlier, and they were off shopping earlier in the day, no doubt that Michael Powell was in that vehicle, and no doubt that his identification is in the vehicle, of course it was. You will hear testimony from two or three women who were there that night, that after being in the car with Michael Powell

earlier in the evening, another man was asked to drive the car, and that man was the person driving the car at the time this happened with the police.

\* \* \*

There will be two or three witnesses, as I said, who will testify as to what happened leading up to that, and why Michael Powell wasn't in the car at that time. It is going to be our position, and we are going to put on evidence that he was not the one driving period.

The State's evidence at trial showed that Waco Police Officer Charles Spann was on traffic duty at the intersection of Sixth Street and Bosque Boulevard in Waco. At about 9:30 p.m., he saw that an approaching white Buick LeSabre did not have its headlights on, and he signaled the driver to stop. When the driver did so, Officer Spann approached the vehicle. He noticed two people in the car but was able to get a good look only at the driver, whom he identified as appellant. The officer then asked appellant for his driver's license and insurance, but appellant replied that he did not have any insurance. Upon hearing this, Officer Spann asked appellant why he was driving the car and where he was going. Appellant responded that it was his sister's car and he was taking it somewhere. At that point, appellant leaned forward and placed his hand on the gearshift. Officer Spann warned that driving away would be a felony offense. Appellant responded with an expletive and began to drive off. Officer Spann then entered his own vehicle, turned on the overhead lights and siren, and began pursuit.

At this point, the State approached the bench and requested a hearing outside the presence of the jury because it wished to offer evidence that was the subject of a motion in limine the trial judge had granted. The evidence that the State wanted to offer was Officer Spann's testimony about

finding a gun on the ground close to the driver's side door to help establish that appellant had a motive for fleeing from the officer. After listening carefully to the officer's testimony outside the presence of the jury and after considering the arguments of opposing counsel, the trial judge concluded that the testimony was admissible.

Officer Spann then told the jury that the car stopped a short distance after he began following it, and the occupants exited the vehicle and fled. As he approached the abandoned car to make sure no other occupants were inside, Officer Spann noticed a .38 revolver on the ground "four to eight inches from the open driver's door." He said that he "knew the gun had just been put there, or recently put there, because they had mowed the grass in Parkside Villages area that day. It was at night, it was a heavy dew, and there was no dew or moisture on the weapon whatsoever, other than the bottom part on the grass that it was laying on." The gun was later checked for fingerprints. The one print that was of comparison quality did not match appellant's fingerprints.

After finding the gun and placing it in his squad car, Officer Spann continued to search the abandoned car. He found appellant's identification card "in the driver's door compartment" and a ringing cell phone lying on the seat. The officer answered the phone, and the caller asked, "Stevie, did Little Mike get away or did the police get him?" After Officer Spann completed the initial car inventory, a police detective at the department conducted follow-up work. The detective determined that the Buick LaSabre was a rental car leased to appellant's girlfriend. Appellant was later arrested for the present offense.

Later in its case-in-chief, outside the jury's presence, the State argued for the admissibility of testimony that appellant

was on parole at the time of the offense. The articulated purpose of this evidence was to further establish appellant's motive to flee. The conscientious trial judge directed that the testimony be proffered outside the presence of the jury for his consideration. After hearing the proffered testimony, the trial judge ruled that the evidence was admissible, but the State decided to wait until rebuttal to introduce it.

During the defense's case-in-chief, appellant called three witnesses, all of whom testified that a man named Marvin Edwards, not appellant, was the person who drove the vehicle and fled from Officer Spann. One of them testified that Edwards had "moved out of town, because of some charge or something that he supposedly got."

On rebuttal, the State then called a parole officer to testify that appellant was on parole at the time of the offense and knew that his parole could be revoked for associating with people who carry firearms. No evidence was introduced regarding what offense was the basis for parole.

Appellant was convicted and was sentenced to twenty years in prison.[1]

## B. Appeal

In his first two points of error on appeal, appellant contended that the admission of evidence of the handgun and of his parole status violated Rules of Evidence 404(b) and 403. The Court of Appeals found the evidence was relevant to a noncharacter purpose under Rule 404(b) because it tended to show motive, which in turn tended to show the elemental fact of identity,[2] but the court also found the probative value of the evidence for this purpose to be substantially outweighed by the danger of unfair prejudice under Rule 403.[3] Consequently, the Court of Appeals held that the trial court had erred in admitting the evidence. After finding that the error was not harmless, the court reversed the conviction and remanded the case for a new trial.[4]

In its Rule 403 analysis, the Court of Appeals evaluated the evidence in light of the four-factor approach originally set forth by this Court in *Montgomery v. State*:[5]

- how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable;
- the potential the other offense has to impress the jury "in some irrational but nevertheless indelible way";
- the time the proponent will need to develop the evidence;
- the force of the proponent's need for this evidence to prove a fact of consequence.[6]

In analyzing the evidence under these factors, the appellate court recognized that the handgun and the parole evidence were intertwined,[7] and it focused mainly on the prejudicial effects of the handgun evidence. Regarding the first factor, the Court of Appeals found the State's evidence connecting appellant to the handgun

---

1. The offense was raised to a third degree felony because he had a previous conviction for evading arrest and was further raised to a second degree felony due to a punishment stage enhancement allegation.

2. *Powell v. State*, 151 S.W.3d 646, 650–651 (Tex.App.-Waco 2004).

3. *Id.* at 651–652.

4. *Id.* at 652–653.

5. 810 S.W.2d 372, 389–390 (Tex.Crim.App. 1991)

6. *Powell*, 151 S.W.3d at 651.

7. *Id.* at 650.

to be weak.[8] Concerning the second factor, the court said, "Because of the State's effort to tie the handgun directly to Powell, evidence relating to the handgun had the potential to influence the jury in an 'irrational but nevertheless indelible way.'"[9] With regard to the third factor, the appellate court acknowledged that the evidence did not require a significant amount of time to present.[10] Finally, regarding the fourth factor, the court observed that the State had "other probative evidence available" to establish appellant's identity as the driver of the car.[11] The Court of Appeals concluded that a consideration of the evidence in light of these factors established that "this is one of those 'rare' cases in which the record demonstrates a 'clear abuse of discretion.'"[12]

With regard to the harm analysis, the Court of Appeals found that identity was a disputed issue and the State's evidence of identity was not overwhelming:

> Powell's counsel pointed out numerous discrepancies between Officer Spann's report and his testimony regarding the events Spann observed on the occasion in question. Powell presented evidence that he was not driving the car on the occasion in question and an explanation for how his identification card came to be in the car. The State argued that Powell's parole status proves his motive and thus "puts this defendant behind the wheel." Although the State offered probative evidence of Powell's identity, it cannot be characterized as "overwhelming."

Chief Justice Gray dissented, contending that, with regard to the admissibility of the evidence, the majority had inappropriately substituted its judgment for that of the trial court.[13]

## II. ANALYSIS

Rule 403 provides:

> Although relevant, evidence *may* be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.[14]

We have repeatedly explained that Rule 403's "use of the word 'may' reflects the draftsman's intent 'that the trial judge be given a very substantial discretion in "balancing" probative value on the one hand and "unfair prejudice" on the other, and that he should not be reversed simply because an appellate court believes that it would have decided the matter otherwise.'"[15]

The Court of Appeals opinion articulates the proper principle of deference.[16] In our view, however, the opinion nevertheless fails to accord the requisite deference to the trial court in the weight it gives to the various factors. The Court of Appeals's assessment that the handgun evidence was only weakly probative of appellant's motive because appellant was only weakly connected to the handgun overlooks the fact that this type of weakness applied equally to the evidence's prejudicial effect. Any

8. *Id.* at 651.

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.* at 652.

13. *Id.* at 654–655 (Gray, C.J. dissenting).

14. Tex R. Evid. 403 (emphasis added).

15. *Manning v. State,* 114 S.W.3d 922, 926 (Tex.Crim.App.2003).

16. *See Powell,* 151 S.W.3d at 650.

"bad character" inference associated with the handgun would be correspondingly attenuated by any uncertainty regarding appellant's connection to that handgun. The opinion's assessment that the evidence had the potential "to influence the jury in an irrational but nevertheless indelible way" is not explained, and support for the proposition is not apparent. And the court's conclusion that the State did not need the motive evidence because there was other probative evidence tending to establish appellant's identity as the driver fails to account for the fact that identity was the *only* issue in the case and appellant had introduced positive testimony controverting the issue of identity. In fact, the appellate court's harm analysis shows precisely why the State *did* need the evidence because, while the State had other evidence of identity, that evidence was contested and was not overwhelming.

A couple of cases from other jurisdictions have addressed the admissibility of evidence of parole status in the Rule 403 context. In *United States v. Cruz*, evidence that the defendant was on parole was introduced to explain why the defendant chose to always utilize intermediaries in illegal drug transactions.[17] Upholding the admission of this evidence, the Third Circuit explained that parole status "has been held to be probative of why a defendant would take extra steps to hide his criminal activity."[18] The court observed that the risk of unfair prejudice was minimized by the fact that "the jury was never given any hint as to what type of crime" led to the parole status.[19] The court concluded its discussion with a comment regarding the need for deference to a trial court's Rule 403 rulings:

> We have emphasized that the trial judge, not the appellate judge, is in the best position to assess the extent of the prejudice caused a party by a piece of evidence. We have also stated that if judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal.[20]

In *State v. Hampton*, evidence of an outstanding arrest warrant for a parole violation was challenged under Oregon's Rule 403, and held to be admissible to show the defendant's motive to get away from a police officer.[21] In *Hampton*, no evidence was introduced regarding the crime for which the defendant was on parole.[22] The Oregon Supreme Court held that the trial court was within its discretion to admit the evidence.[23]

Given that the jury in this case was not informed of the crime for which appellant was on parole, that the strength or weakness of the handgun's connection to appellant reflected equally on the issues of probative value *and* prejudice, and that there was reason to believe that the State had a significant need for the evidence, we conclude that the trial court was within its discretion to hold that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. In holding to the contrary, the Court of Appeals failed to properly defer to the trial court's decision.

**17.** 326 F.3d 392, 394 (3rd Cir.2003).

**18.** *Id.* at 395.

**19.** *Id.* at 396.

**20.** *Id.* (internal quotation marks, citations and brackets omitted).

**21.** 317 Or. 251, 257–258, 855 P.2d 621, 624–625 (Or.1993).

**22.** *Id.* at 257 n. 10, 855 P.2d 621.

**23.** *Id.* at 259–260, 855 P.2d 621.

The judgment of the Court of Appeals is reversed, and the case is remanded for consideration of appellant's remaining point of error.

JOHNSON, J., concurred in the result.