IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00226-CR

 

Edwin Peter Jimenez, Sr.,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 



From the 18th District Court

Johnson County, Texas

Trial Court No. F38026

 



MEMORANDUM  Opinion










 

      Jimenez appeals his convictions for
indecency with a child against T. P.  See Tex. Penal Code Ann. § 21.11(a) (Vernon 2003).  We
affirm.

      In Jimenez’s two issues, he contends that
the trial court erred in excluding certain testimony.  “In considering a trial
court’s ruling on the admissibility of evidence, an appellate court must
determine whether the trial court abused its discretion.”  Carrasco v.
State, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); accord McDonald v.
State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); see White v. State, 478
S.W.2d 506, 509 (Tex. Crim. App. 1972).  “In other words, the appellate court
must uphold the trial court’s ruling if it is reasonably supported by the
record and is correct under any theory of law applicable to the case.”  Carrasco
at 129.  “A trial court abuses its discretion when its decision is so
clearly wrong as to lie outside that zone within which reasonable persons might
disagree.”  McDonald at 576; see Montgomery v. State, 810 S.W.2d
372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  “If the ruling was correct on
any theory of law applicable to the case, in light of what was before the trial
court at the time the ruling was made, then we must uphold the judgment.”  Martin
v. State, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005) (quoting Sauceda v.
State, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004)).  

      Guilt-Innocence Evidence.  In
Jimenez’s first issue, he contends that the trial court erred in sustaining the
State’s objections to evidence of T. P.’s “background” that Jimenez sought
to elicit on cross-examination of State’s witnesses.  (Br. at 3-4.)  In particular, Jimenez points to evidence that W. P., T. P.’s
mother, “had extramarital affairs, engaged in inappropriate conduct in front of
T.P., was involved in questionable web sites and pornography, allegedly engaged
in drug abuse, committed domestic violence and threatened to move T. P.
and her sisters to another state.”  (Id. at 9.)  Upon the divorce of
T. P.’s parents, the trial court ordered that her visitation with
W. P. be supervised by either T. P.’s father or W. P.’s mother,
the wife of Jimenez.  See Tex.
Fam. Code Ann. §§ 153.312-153.313 (Vernon 2002 & Supp. 2005)
(standard possession order).  Jimenez argues that, that evidence would have
proved T. P.’s resentment toward W. P., and thus T. P.’s motive
to fabricate allegations against Jimenez, in order to avoid visitation with
W. P. in Jimenez’s home. 

      Rules of Evidence.  First, Jimenez
argues that the evidence was admissible under the Texas Rules of Evidence.  The
State objected that the evidence was irrelevant and objected under Rule of
Evidence 403.[1]  See Tex.
R. Evid. 401-403. “‘Relevant evidence’ means evidence having any
tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.”  Id.
401.  “Evidence which is not relevant is inadmissible.”  Id. 402.  Under Rule 403, “[a]lthough
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.”  Id. 403.  “Evidence may confuse or mislead the jury if it
distracts the jury from the main issues in the case or tends to focus the
jury’s attention on facts tangential to the case before them.”  Resendiz v.
State, 112 S.W.3d 541, 545 (Tex. Crim. App. 2003), cert. denied, 541
 U.S. 1032 (2004).  

      “The standard of review for a trial
court’s ruling under the Rules of Evidence is abuse of discretion.”  Martin,
173 S.W.3d at 467 (quoting Sauceda, 129 S.W.3d at 120); accord Montgomery, 810 S.W.2d at 391 (op. on reh’g); see McDonald, 179 S.W.3d at 576. 
Under Rule 403, in particular, that rule’s 

use of the word “may” reflects the draftsman’s
intent “that the trial judge be given very substantial discretion in
‘balancing’ probative value on the one hand and ‘unfair prejudice’ on the
other, and that he should not be reversed simply because an appellate court believes
that it would have decided the matter otherwise.”  

Powell v. State, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006)
(quoting Manning v. State, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003)
[(quoting Montgomery, 810 S.W.2d at 379 (1990) (op. on orig.
submission))]).  “[T]he trial judge, not the appellate judge, is in the best
position to assess the extent of the prejudice caused a party by a piece of
evidence.”  Id. at 289 (quoting United States v. Cruz, 326 F.3d
392, 396 (3d Cir. 2003) (internal quotation marks omitted)).  “[I]f judicial
self-restraint is ever desirable, it is when a Rule 403 analysis of a trial
court is reviewed by an appellate tribunal.”  Id. (quoting Cruz at
396 (internal quotation marks omitted)). 

      “A proper Rule 403 analysis includes, but
is not limited to, the following factors: (1) the probative value of the
evidence; (2) the potential to impress the jury in some irrational, yet
indelible, way; (3) the time needed to develop the evidence; and,
(4) the proponent’s need for the evidence.”  Prible v. State, 175
S.W.3d 724, 733 (Tex. Crim. App.), cert. denied, 126 S. Ct. 481
(2005); accord Montgomery, 810 S.W.2d at 389-90 (op. on reh’g); see
Powell, 189 S.W.3d at 287-88.

      Moreover, “[t]he trial court maintains
broad discretion to impose reasonable limits on cross-examination to avoid
harassment, prejudice, confusion of the issues, endangering the witness, and
the injection of cumulative or collateral evidence.”  Lopez v. State, 18
S.W.3d 220, 222 (Tex. Crim. App. 2000); accord Lagrone v. State, 942
S.W.2d 602, 613 (Tex. Crim. App. 1997).  However, “[t]he motives which operate
upon the mind of a witness when he testifies [for the State] are never regarded
as immaterial or collateral matters.”  Virts v. State, 739 S.W.2d 25, 31
(Tex. Crim. App. 1987) (quoting Blair v. State, 511 S.W.2d 277, 279
(Tex. Crim. App. 1974)) (2d alteration in Virts); accord Thomas v.
State, 137 S.W.3d 792, 795 (Tex. App.—Waco 2004, no pet.); see Thomas v.
State, 916 S.W.2d 540, 545 (Tex. App.—Waco 1995, no pet.).  Thus, “[g]reat
latitude should be allowed the accused in showing any fact which would tend to
establish ill-feeling, bias, motive and animus upon the part of any witness
testifying against him[.]”  Koehler v. State, 679 S.W.2d 6, 9 (Tex.
Crim. App. 1984) (quoting Blair at 279) (1st alteration in Koehler).   


      The State concedes that the evidence was
“marginally relevant,” (see Br. at 12, 13; 14), but argues that the
evidence’s probative value was low.  Evidence that is marginally relevant is
admissible unless barred otherwise than by Rule 402, such as by Rule 403.  See
Tex. R. Evid. 402.

      Jimenez contends that because the evidence
was probative its probative value was not substantially outweighed by its
danger of unfairly prejudicial effect.  Otherwise, Jimenez does not argue that
the evidence was admissible in the face of Rule 403.  

      As the State argues, the probative value
of the evidence was low.[2]  The State argues that the evidence was “not
compelling” in establishing a motive for T. P. to make false accusations
against Jimenez.  (Br. at 16.)  T. P.’s visitation with W. P. was
ordered by the divorce court.  T. P. could have had visitation with
W. P. supervised by H. J. without Jimenez’s being present, and there
was evidence that such visitation occurred in public places.  The evidence of
the affair was remote, the alleged affair having taken place seven or eight
years before T. P.’s allegations.  As to the potential to impress the
jury, next, the evidence was likely to confuse the issues and mislead the jury into
a trial of W. P.’s character rather than of Jimenez’s guilt.  As to the
time needed to develop the evidence, next, that time would probably have been
substantial.  Jimenez developed the evidence through his own witnesses, and
sought to do so through at least three of the State’s witnesses.  Lastly, as to
Jimenez’s need for the evidence, the need was not great.  Jimenez presented
evidence that T. P. blamed W. P. for the divorce, and was upset and
angry with and resented W. P. immediately after the divorce; and evidence
that T. P. stated that she would do anything to avoid visitation with
W. P. at Jimenez’s house.  Jimenez also examined the jury panel on
fabrication by children, and argued that T. P. fabricated her allegations
in order to avoid visitation with W. P.  Accordingly, the trial court did
not abuse its discretion in sustaining the State’s objections under the Rules
of Evidence.

      Constitution.  Next, Jimenez argues
that the trial court’s refusal to allow Jimenez to cross-examine State’s
witnesses on those issues denied Jimenez the right of confrontation; see U.S. Const. amends. VI, XIV; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05
(Vernon 2005); and denied him the due-process right to present a defense; see
U.S. Const. amends. V, VI,
XIV.  Jimenez forfeited his constitutional arguments. 

      “As a prerequisite to presenting a
complaint for appellate review, the record must show that . . . the
complaint was made to the trial court . . . .”  Tex. R. App. P. 33.1(a).  “Except for
complaints involving systemic (or absolute) requirements, or rights that are
waivable only . . . all other complaints, whether constitutional,
statutory, or otherwise, are forfeited by failure to comply with Rule
33.1(a).”  Neal v. State, 150 S.W.3d 169, 175 (Tex. Crim. App. 2004)
(quoting Mendez v. State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004))
(ellipsis in Neal); see Marin v. State, 851 S.W.2d 275, 277-80
(Tex. Crim. App. 1993).  Rule 33.1 is a “‘judge-protecting’ rule[] of error
preservation.”  Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim. App.
2005) (quoting Martinez v. State, 91 S.W.3d 331, 335 (Tex. Crim. App.
2002)).  “[T]he party complaining on appeal . . . about a trial
court’s admission, exclusion, or suppression of evidence must, at the earliest
opportunity, have done everything necessary to bring to the judge’s attention
the evidence rule or statute in question and its precise and proper application
to the evidence in question.”  Id. (quoting Martinez at
335-36).  “The issue . . . ‘is . . . whether the
complaining party on appeal brought to the trial court’s attention the very
complaint that party is now making on appeal.’”  Id. (quoting Martinez at 336).  

      Jimenez does not indicate that the record
shows that he addressed his constitutional arguments to the trial court. 
Accordingly, Jimenez forfeited those arguments.  

      We overrule Jimenez’s first issue.

      Punishment Evidence.  In
Jimenez’s second issue, he contends that the trial court limited the testimony
of Jimenez’s psychological expert and so erred.  The record does not show that
the trial court unduly limited the witness’s testimony. 

      “A trial court’s ruling on the
admissibility of scientific expert testimony is reviewed under an abuse of
discretion standard.”  Russeau v. State, 171 S.W.3d 871, 881 (Tex. Crim.
App. 2005), cert. denied, No. 05-8398, 2006 U.S. LEXIS 5226 (U.S. June 30, 2006), & cert. denied, No. 05-856, 2006 U.S. LEXIS 5237 (U.S. June 30, 2006); accord Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App.
2000).

      The trial court held a hearing, on the
State’s objection, on the scope of Dr. Arthur Swen Helge’s expert testimony.  See
Tex. R. Evid. 702-705.  In
the following colloquy among the prosecutors Burnett and Bakker and Jimenez’s
counsel Ward, the trial court clearly expressed its intention to overrule the
State’s objection and admit all of the testimony that Dr. Helge gave at the
hearing:  

      MS. BURNETT:  Judge, so that
my mind is straight and we’re all on the same page come Monday morning, I want
to make sure then the opinion that we’re talking about that he is allowed to
give is on this issue that in his opinion the Defendant is a low risk for
re-offending.  He’s not going to go into other areas or give any other opinions
regarding this Defendant’s—

      THE COURT:  Well, all I can
make my ruling really on is based on what I’ve heard him testify to today.

      MS. BURNETT:  I just want to
make sure that’s all I heard him testifying to and I didn’t miss anything.

      THE COURT:  Is there anything
else you remember him testifying to?

      MR. WARD:  It’s been a long
day, Judge.  I don’t remember anything additional.

      THE COURT:  Let’s limit it to
that then.

      MS. BURNETT:  Thank you.

      MR. WARD:  Well, I think—I’m
asking that he be allowed to testify with regard to what’s in the report, which
I think is what he testified to, the four or five tests that he performed.

      THE COURT:  If nobody can
remember it’s going to be hard.

      MR. WARD:  Whatever is in the
report, Judge, is what we’re asking he be allowed to testify to.

      THE COURT:  Let’s just limit
it to the issue of likelihood to re-offend.

      MR. WARD:  Well, Judge, I
think Dr. Helge is going to testify that these other factors are relevant when
assessing that, which is why he had Mr. Jimenez undergo these tests.

      THE COURT:  Well, did he testify
to that or—

      MR. WARD:  Yeah, I believe he
did.

      MS. BAKKER:  I do not recall
that, Judge.  . . . .

      . . . .

      . . . Specifically,
when I asked him what exactly is your opinion, he stated he would testify that
the Defendant was low risk for re-offending.  And when we talked about that and
when I talked about that with Dr. Helge, he relied entirely, to my
recollection, on that Static-99 test.

      . . .

      MS. BAKKER:  Because he talked
about the recidivism and what that meant.

      MR. WARD:  Dr. Helge went
through the Bender Motor Test.  He went through the MMPI-II test, the PAI test
and then he went on to the Static-99 test and he went through the findings on
each.  He didn’t just talk about the Static-99.  When we approached the bench,
I said he would talk about the likelihood for recurrent history of sexual
offenses when I approached you, but Dr. Helge testified to all four or five of
these tests and he testified as to why they’re relevant.

      We think he should be able to
get into that.  . . . .

      THE COURT:  . . . . 
My question to you was originally, did he testify to that and the response was,
Judge, it’s been a long day, I don’t remember.  And so I don’t remember.  I’m
going to allow him to testify to what I do remember him testifying to here in
court.  And I don’t know what else to do.

      . . . .

      MR. WARD:  Judge, I was going
to recommend we talk to [the court reporter] and see if we—I know for a fact—I
mean, I don’t know the details about what all he said.  I do know we went
through the MMPI, what they stood for.  He talked about the PAI.  I know he
said that.  I know he went through the four-page report.  I know that.

      THE COURT:  Okay.

      MR. WARD:  I think it’s
important for—I think he should be allowed to testify.  . . . .

      . . . .

      THE COURT:  [I]t gets back to
what he testified to.  I’m not going to make [the reporter] stay up here any
longer than we’re going to stay up here to find out.  If you want—if your
client—if you want to talk to [the reporter] about how much it would cost to
prepare that, I’ll let y’all work that out.  But I’m basing my ruling, quite
honestly, of [sic] what both of y’all told me.  And what I recall, which is
basically the same thing that y’all recalled.

      I am going to allow him to testify as to
what I remember him testifying to earlier, which was the likelihood to
re-offend.  If you want to talk to [the reporter] and work out getting that
typed up and that transcript, I’m going to let y’all talk about that.  And if I
need to revisit that issue after you’ve done that, I’ll be glad to do that.

(13 R.R. 101-105.)  Jimenez does not indicate
that he re-urged the matter to the trial court with evidence that would
contradict the court’s recollection of the witness’s testimony.  See Loredo
v. State, 159 S.W.3d 920 (Tex. Crim. App. 2004).  The trial court admitted
all of the testimony that the court understood the witness to have given.  In
doing so, the court did not abuse its discretion.[3]  We overrule Jimenez’s second issue.

      Conclusion.  Having overruled Jimenez’s issues, we
affirm.

TOM GRAY

Chief
Justice

Before Chief Justice Gray,

      Justice Vance, and

      Justice
Reyna

Affirmed

Opinion
delivered and filed July 26, 2006

Do
not publish

[CR25]









[1]  At
trial, the State objected in the first place to evidence of “specific instances
of conduct” of W. P.  See Tex.
R. Evid. 404(a), 607-609.  On appeal, the State does not pursue that
argument.





[2]  Much
of the testimony probably also constituted objectionable speculation or
hearsay, at least from the witnesses through whom Jimenez sought to introduce
it, and the State also objected on those grounds.  See Tex. R. Evid. 602, 802.





   [3]  In any case, Jimenez
introduced the evidence concerning which he now complains.  Jimenez argues:

[At] a Rule 705 Hearing, Dr.
Helge testified to the following: (1) the Bender-Gestalt Test, which
measures “neuropsychological development and functioning;” (2) the
Wechsler Adult Intelligence Scale to determine how Appellant is “functioning
intellectually;” (3) the Minnesota Multiphasic Personality Inventory Form
2; (4) the Personality Assessment Inventory regarding Appellant’s
“personality development and functioning;” (5) the HARE considering Appellant’s
adult and childhood backgrounds, education, military experience, employment
history, relationships and any previous criminal history; and (6) the
Static-99 to determine the level or risk for recidivism.  (R.R. Vol. 13, P26,
L12-P27, L18; P 28, L4-8).

(Br. at 14.)  Jimenez thus points to some thirty-five
lines of trial testimony.  Dr. Helge testified generally concerning those tests
before the jury, and at greater length than he had in the hearing.  (14 R.R. at
9-13.)