

# IN THE
## TENTH COURT OF APPEALS

### No. 10-06-00328-CR

**ELTON YARBROUGH,**

                              **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                              **Appellee**

**From the 361st District Court**
**Brazos County, Texas**
**Trial Court No. 05-01239-CRF-361**

## MEMORANDUM OPINION

Elton Yarbrough was convicted of sexual assault and sentenced to 18 years in prison. He appeals his conviction. Because the trial court did not abuse its discretion in admitting extraneous offense evidence, we affirm the trial court's judgment.

### BACKGROUND

Lisa Reynolds and her roommate, Rachel Wilson, were both foreign students from Lancaster University, England, studying for one year at Texas A&M University. Reynolds was originally from Dublin, Ireland, but had lived all over the world. Reynolds met Yarbrough through Wilson's registration on Facebook, an online website

for university students.  Reynolds then also joined Facebook and communicated with Yarbrough through that website and through Instant Messaging.  During the Thanksgiving holidays, and after communicating for a few weeks, Reynolds and Yarbrough went to a bar together to play pool.  Afterwards, Yarbrough took Reynolds back to her apartment and entered the apartment with her.  Reynolds hinted for Yarbrough to leave, but he would not until Reynolds finally told him to leave because she was tired.

The next night, Reynolds invited Yarbrough over to her apartment and asked him to bring some alcohol.  He did so, and after a few drinks, he, Reynolds, Wilson, Wilson's boyfriend, and another friend went to a bar.  Reynolds did not spend much time at the bar with Yarbrough.  At closing time, Yarbrough escorted Reynolds out of the bar.  They all went back to Reynolds's apartment.  The other friend then left.

Yarbrough helped Wilson's boyfriend into the apartment because he was extremely intoxicated.  Reynolds was drunk but not to the point where she could not function.  Yarbrough stayed at the apartment, wanting to take care of Reynolds.  Later, when Reynolds fell asleep on the couch, Wilson asked Yarbrough to carry Reynolds to her bed. Wilson had to ask Yarbrough to leave the room while Wilson helped Reynolds into her pajamas.  Yarbrough returned to Reynolds's room and remained there.  He later asked if he could remove his sweater, which he was allowed to do.  He had on another shirt underneath the sweater.  He lay down on the bed with Reynolds. Yarbrough was on top of the covers while Reynolds was under the covers.  Reynolds asked Wilson to stay with her.  She did, and crawled under the covers with Reynolds.

At some point, Wilson was pushed out of bed. Seeing both Yarbrough and Reynolds asleep, she returned to her room. She then heard Reynolds's door close. A short time later, Reynolds awoke to Yarbrough on top of her, with his penis inside her. Reynolds pushed Yarbrough off of her, ran to her door, struggled with it before it opened, and ran to Wilson's room. She screamed for Wilson to get Yarbrough out of the house. Yarbrough, while buttoning his pants, exited Reynolds's room and left the apartment. A few days later, Yarbrough admitted to the sexual encounter on a taped telephone conversation to Reynolds

## EXTRANEOUS OFFENSE

In one issue, Yarbrough asserts that the trial court erred in admitting extraneous offence evidence over his Rule 404(b) and Rule 403 objection. The complained of evidence involved testimony, offered by the State on rebuttal, from Heather Cahill regarding a sexual assault on her by Yarbrough which was similar to the assault on Reynolds.

### RULE 404(B)

When reviewing a trial court's ruling on the admission of evidence, we apply an abuse of discretion standard of review. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id*.

The text of rule 404(b) provides in pertinent part, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such

as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  TEX. R. EVID. 404(b).  Thus, evidence that does not have relevance apart from character conformity is inadmissible.  *Casey*, 215 S.W.3d at 879.  Extraneous-offense evidence is not inadmissible under Rule 404(b) if the extraneous-offense evidence is relevant to a fact of consequence apart from its tendency to show conduct in conformity with character.  *Id.*  Further, extraneous-offense evidence is not inadmissible under Rule 404(b) when it is offered to rebut an affirmative defense or a defensive issue that negates one of the elements of the crime.  *Id.*

Yarbrough argues that the State had no reason, other than character conformity, to request the admission of Cahill's testimony.  We disagree with Yarbrough.  Although Yarbrough contends otherwise, throughout the entire guilt innocence phase of the trial, it was evident that Yarbrough's defensive theory was that Reynolds consented to the sexual encounter.  In his opening statement, Yarbrough's counsel wondered aloud what kind of signals Reynolds was sending and what kind of signals Yarbrough was receiving.  During cross-examination of the State's witnesses, some of whom Yarbrough re-called as witnesses during the presentation of the defense's case, Yarbrough emphasized that Reynolds was educated, sophisticated, experienced with drinking and socializing in different countries, and was not naive.   He also tried to establish that Reynolds was more intoxicated than she originally led the jury to believe.  Yarbrough further emphasized that no one asked him to leave the apartment, no one asked him to get off the bed, and no one asked him to leave his sweater on.  During his examination of Reynolds, Yarbrough stressed that Reynolds liked Yarbrough enough to:  give him

her phone number; refer to him in on-line communications as "Sweets" or "Sweetie;" go out with him alone the night before the offense; allow him to enter the apartment the night before the offense; invite him over again the next night; go to a bar with him; place her hand on his leg (although Reynolds stated that it was due to lack of space in the back seat of the car); and again allow him into the apartment.

Even the trial court acknowledged, out of the presence of the jury, that "…this whole case is consent." At that point in time, Yarbrough remained silent as to whether or not he was contesting the issue of consent. It was not until the State offered the admission of the extraneous offense that Yarbrough denied developing the theory of consent. And when the defensive theory of consent is raised in a prosecution of sexual assault, the defendant necessarily disputes his intent to engage in the alleged conduct without the complainant's consent and places his intent to commit sexual assault at issue. *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007).

Based on a review of the record, we cannot conclude the trial court's ruling was outside the zone of reasonable disagreement. Therefore, the trial court did not abuse its discretion in admitting the extraneous evidence over Yarbrough's Rule 404(b) objection.

*Rule 403*

The trial court is given very substantial discretion in balancing probative value on the one hand and unfair prejudice on the other; and the trial court should not be reversed simply because an appellate court believes it would have decided the matter differently. *Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006); *Hernandez v. State*, 203 S.W.3d 477, 481 (Tex. App.—Waco 2006, pet. ref'd). Recently, in *Gigliobianco v.*

*State*, the Court of Criminal Appeals clarified its precedents explaining the application of Rule 403 to "bring it in line with the plain text of 403." *Gigliobianco v. State*, 210 S.W.3d 637, 642 n.8 (Tex. Crim. App. 2006). Under the clarified standard, a trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641-642 (Tex. Crim. App. 2006).

Contrary to the argument made by Yarbrough, Cahill's testimony strongly served to make the sexual assault on Reynolds more probable. The offenses were very similar. After becoming highly intoxicated at a local bar, Cahill was offered a ride home by Yarbrough. He took her to his fraternity house and placed her on the couch. Cahill passed out and woke up to Yarbrough performing oral sex on her. She told him to stop, and she pushed him away. Further, the State had a great need for this evidence. Consent was the only issue in this case, and Yarbrough vigorously asserted throughout the trial that Reynolds consented to the sexual encounter. The State had no uncontested

evidence to prove that Yarbrough's sexual encounter with Reynolds was without her consent.

An extraneous sexual assault can present the danger of the jury making a decision on an improper, emotional basis. *See Wheeler v. State*, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002); *Montgomery v. State*, 810 S.W.2d 372, 397 (Tex. Crim. App. 1990) (op. on reh'g). But the presentation of Cahill's testimony did not take such a great amount of time as to confuse or distract the jury from the main issue of the case. Yarbrough argues that Cahill's testimony was a distraction to the jury because the direct examination lasted longer than all of the State's witnesses except Reynolds and her roommate, Wilson. However, those other witnesses only set the stage for the testimony for Reynolds and Wilson and therefore, should not have been lengthy. Further, Cahill's direct examination consumed less than 20 pages of a two-day trial on guilt/innocence. Next, there is nothing to suggest that the jury was not equipped to evaluate the probative force of the evidence, and as stated previously, the evidence was not unduly lengthy and did not present unnecessary cumulative evidence.

Based on a review of the relevant factors, we cannot conclude that the trial court abused its discretion in admitting the extraneous offense evidence over Yarbrough's Rule 403 objection.

## CONCLUSION

Because the trial court did not abuse its discretion in admitting the extraneous offense evidence, Yarbrough's sole issue is overruled. The trial court's judgment is affirmed.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna
      (Justice Vance concurs in the judgment with a note) *
Affirmed
Opinion delivered and filed November 26, 2008
Do not publish
[CR25]


     * "(The admissibility of the extraneous-offense evidence is a close call but within the zone of reasonable disagreement. Applying all the applicable factors, I agree that the trial court did not abuse its discretion, so I concur in the judgment.)"