

# IN THE
# TENTH COURT OF APPEALS

### No. 10-10-00370-CR

**JUANITA SVENNINGSEN,**

                                               **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                               **Appellee**

#### From the 82nd District Court
#### Falls County, Texas
#### Trial Court No. 8627

## MEMORANDUM OPINION

Juanita Svenningsen was convicted of capital murder while incarcerated for murder. TEX. PENAL CODE ANN. § 19.03(a)(6)(A) (West 2011). She was sentenced to life in prison without the possibility of parole. The trial court's judgment is affirmed.

### BACKGROUND

Svenningsen was in prison for committing murder. She had had a new cell mate for two days. During an inmate count, she informed a correctional officer, "My cell mate is dead." Svenningsen's cell mate, Mary Lou Cristan, was found lying on the floor, her hands tied behind her back. Cristan had no pulse and was not breathing. She

had been severely beaten. Her right eye was so swollen that it was protruding from the socket. She had ligature marks on her neck and bite marks on her shoulder, chest, and back. Despite the efforts of the prison personnel, EMS personnel, Emergency Room personnel, Cristan was dead. An autopsy was conducted and the pathologist indicated that Cristan died from asphyxiation and blunt force trauma. The pathologist discovered signs that Cristan had been strangled both by a ligature and by hands. He also saw signs that Cristan's chest had been placed under a great deal of pressure as to cause asphyxiation and that she had blunt force trauma to her forehead and the base of her skull. A bite mark expert matched the marks on Cristan to Svenningsen's teeth. Svenningsen suffered minor scrapes and bruises from the altercation. And, in both oral and written statements, Svenningsen claimed that Cristan had attacked her first.

### EXTRANEOUS OFFENSE EVIDENCE

In Svenningsen's sole issue, she contends the trial court erred in admitting extraneous offense evidence during the guilt phase of the trial. She argues the evidence was inadmissible under Rule 404(b) and even if admissible, it was "unduly prejudicial under a Rule 403 analysis." TEX. R. EVID. 403; 404(b).

A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *De La Paz*, 279 S.W.3d at 343-44; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on rh'g).

*Rule 404(b)*

Evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith."  TEX. R. EVID. 404(b).  But that type of evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *De La Paz v. State*, 279 S.W.3d at 342-43 (quoting Rule 404(b)).  The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive.  *Id*. at 343.  For example, though not specifically listed in Rule 404(b), extraneous-offense evidence may be admissible when a defendant raises an affirmative defense or a defensive issue that negates one of the elements of the crime, or when the evidence is "same transaction contextual evidence." *Berry v. State*, 233 S.W.3d 847, 858 (Tex. Crim. App. 2007); *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004).

The specific extraneous offense evidence about which Svenningsen complains came from her former cell mate and lover, Brandy Gilbreath.  Gilbreath was allowed to testify that physical abuse began when Gilbreath first slapped Svenningsen during an argument.  Gilbreath testified that during another later argument, Svenningsen hit Gilbreath in the eye which knocked her off her stool.  Svenningsen then continued to be abusive.  Gilbreath testified that

> She would ball up her fist and punch me, and there would be times when I would be on the floor and she would kick me in my back and hit me in my back.  I'd be crying and asking her to stop, and she would continue to do it.  She would pull my hair.

Gilbreath also stated

She would wrap her hand up in my hair and pull my head all the way back until I was – my head was touching my back and I would feel like my neck would snap. And I would ask her to stop, and she – she still wouldn't.

She further testified that Svenningsen would hit her, kick her, cause black eyes, and bite her.

Over Svenningsen's 404(b) objection, the State argued that the evidence was admissible to rebut Svenningsen's self-defense theory and that the evidence shows knowledge and intent. The trial court reviewed Svenningsen's statement and caselaw presented by the State and allowed the testimony to be admitted. A limiting instruction was included in the court's charge to the jury.

From the beginning of the trial, Svenningsen was placing the blame on Cristan. During Svenningsen's opening statement, counsel stated

These kinds of cases are some of the most interesting cases that you can be involved in, because it really has to do with trying to get into a person's head and figuring out what their intent was.

***

So people in the penitentiary have always got to be on their guard -- on their guard from other inmates, on their guard from being set up, on their guard from people who might not be rational and reasonable and might not do the kinds of things that we would expect ordinary folks to do. Instead, they may be people who overreact; they may be people who react for bizarre reasons or no reason, because that's the kind of person that they are. So inmates in prison don't choose their cellmates, and they've always got to be on guard for that cell mate.

***

So that's going to be the real question that you have to focus in on: What is the specific intent of Janie Svenningsen in this fight? Is it to protect herself? Is it to put an end to this threat of the fight from the roommate

who was agitated, who has attacked her when she's at her most vulnerable? Or did she intentionally and knowingly kill the person?

And a defense opening statement may open the door to the admission of extraneous-offense evidence to rebut defensive theories presented in that opening statement. *De La Paz v. State*, 279 S.W.3d 336, 345 (Tex. Crim. App. 2009).

Svenningsen's written and volunteered oral statements to prison personnel, which were introduced into evidence, showed Svenningsen's belief that Cristan attacked her and Svenningsen defended herself. On cross examination of a witness who had stated that Svenningsen showed no remorse, counsel asked, "So if you were defending yourself, you wouldn't show remorse for having defended yourself, would you?" When questioning the bite mark expert, counsel asked "…you would expect that if somebody—if you thought somebody was trying to kill you and you were going to bite them to break free, you would expect that person to bite as hard as they could, wouldn't you?" Further, when questioning the pathologist about injuries to Svenningsen, counsel asked "…that's consistent with being either an offensive or defensive wound, if they are fingernails?"

Svenningsen's theory of the case, that she was defending herself from an attack by Cristan, was readily apparent from counsel's opening statement and cross-examination of witnesses. The extraneous evidence that Svenningsen had engaged in abusive behavior with a prior cell mate, similar to what had been inflicted on Cristan, rebutted that theory. Accordingly the trial court did not abuse its discretion in admitting this testimony.

*Rule 403*

Svenningsen further argues that even if the testimony is admissible, it was "unduly prejudicial" under Rule 403.

Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. A trial court is given very substantial discretion in balancing probative value on the one hand and unfair prejudice on the other; and the trial court should not be reversed simply because an appellate court believes it would have decided the matter differently. *Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006). A trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence--that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-642 (Tex. Crim. App. 2006).

In this case, evidence of the similar abusive conduct by Svenningsen against a former cell mate made Svenningsen's self-defense theory much less probable, and the State had no other evidence to rebut this theory. Although Svenningsen argues on appeal that it was clear she was not justified in using deadly force, the State still needed this extraneous offense evidence to question whether Svenningsen acted in self defense at all. The evidence did not have a tendency to distract or confuse the jury from the main issues, nor did it have the tendency to be given undue weight by the jury. Given the limiting instruction in the charge, the jury was equipped to evaluate the probative force of the evidence. Lastly, the testimony presenting the evidence did not take an inordinate amount of time to present. Gilbreath's entire testimony covered 21 pages. The testimony regarding the past abuse covered 6 of those 21 pages.

Accordingly, the trial court did not abuse its discretion in determining that the probative value of the evidence was not substantially outweighed the danger of unfair prejudice.

Svenningsen's sole issue is overruled.

### CONCLUSION

Having overruled the only issue on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed

Opinion delivered and filed September 21, 2011
Do not publish
CRPM]