

# IN THE
# TENTH COURT OF APPEALS

## No. 10-21-00181-CR

**MICHAEL TODD AUSTIN,**

                                       **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                       **Appellee**

---

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 19-02612-CRF-85

---

## MEMORANDUM OPINION

---

Michael Todd Austin was convicted of aggravated sexual assault and sentenced to 63 years in prison. Because the trial court did not abuse its discretion in admitting extraneous offense evidence or in denying two requests for a mistrial, the trial court's judgment is affirmed.

**BACKGROUND**

The victim in this case was 37 years old at the time of trial. In the 1990's he lived in College Station. In 1992-1993, he met Austin who lived across the street. Austin began

sexually abusing the victim from when the victim was about 8 years old until he was about 13 years old.

The victim has been to prison three times. While in jail before his last conviction, he listened to sex offenders talk about their cases. He contacted a crime victims associate who referred the victim to a counselor from the Sexual Assault Resource Center. The victim told the counselor what Austin had done and attempted to provide locations and dates of the incidents of abuse. The victim testified at trial that he did not talk to the SARC counselor to charge Austin with a crime; rather, he said, "the biggest thing was getting it off my chest." He also said he had not received any benefit in exchange for his testimony.

**EXTRANEOUS OFFENSE EVIDENCE**

In his first two issues, Austin complains that the trial court erred by admitting extraneous offense evidence in violation of Rule 403 of the Texas Rules of Evidence during the guilt-innocence stage of the trial. Austin contends that the probative value of testimony by the victim's brother regarding similar acts of sexual abuse by Austin and of State's Exhibit 26, regarding a charge and judgment of indecency with a child, was outweighed by the danger of unfair prejudice.

*Evidence*

In its case-in-chief at the guilt-innocence stage of the trial, the State called the victim's older brother,[1] who testified that Austin began sexually abusing him, in a similar

---

[1] Because of a similarity of initials between the victim and his brother, we use the references, victim or brother, rather than their initials.

manner as the victim, when he was between the ages of eight and ten years old. The abuse ended when brother was 14 years old "or so." Brother testified the abuse occurred "close to" 50 times.

The State also introduced into evidence Exhibit No. 26, a six-page document which included an indictment, a plea agreement, and an order deferring adjudication for the offense of indecency with a child. A former probation officer sponsored the exhibit and testified that he supervised Austin in 1998 after Austin received deferred adjudication for the offense.

After hearing argument by the parties, the trial court ruled brother's testimony and Exhibit 26 were admissible over Austin's Rule 403 objection.

*Article 38.37*

At the trial of a defendant accused of, among other things, aggravated sexual assault of a child, evidence of certain extraneous offenses committed by the defendant, including aggravated sexual assault of a child and indecency with a child, is admissible under Section 2 of Article 38.37 "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. art. 38.37, § 2; *Fahrni v. State*, 473 S.W.3d 486, 492 (Tex. App.—Texarkana 2015, pet ref'd). Before evidence under article 38.37 is introduced, the trial judge must conduct a hearing outside of the jury's presence to "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." TEX. CODE CRIM. PROC. art. 38.37, § 2-a. Here, an article 38.37 hearing

was held, and the trial court determined the extraneous offense evidence to be admissible. Austin does not complain on appeal about those rulings.

Under Article 38.37, evidence of extraneous offenses against other children is admissible even if such evidence would be otherwise inadmissible under Rules 404 or 405 of the Texas Rules of Evidence. *Id.* However, the admission of evidence under Article 38.37 "is limited by Rule 403's balancing test, which permits admission of evidence as long as its probative value is not substantially outweighed by its potential for unfair prejudice." *Bradshaw v. State*, 466 S.W.3d 875, 882 (Tex. App.—Texarkana 2015, pet. ref'd); Tex. R. Evid. 403.

### *Rule 403*

Rule 403 of the Texas Rules of Evidence allows the exclusion of relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Tex. R. Evid. 403. Austin complains on appeal that the probative value of the extraneous offense evidence was outweighed only by the danger of unfair prejudice.

Probative value refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence. *Valadez v. State*, No. PD-0574-19, 2022 Tex. Crim. App. LEXIS 217, at *11 (Crim. App. Mar. 30, 2022). Relevant evidence is presumed to be more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). However,

evidence may be unfairly prejudicial if it prompts the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence. *Valadez v. State*, No. PD-0574-19, 2022 Tex. Crim. App. LEXIS 217, at *11 (Crim. App. Mar. 30, 2022) (publish). In sum, as pertinent here, a court must balance the probative force of the proffered evidence and the proponent's need for it against any tendency of the evidence to suggest decision on an improper basis. *Id*. *11-12.

A trial judge has substantial discretion in balancing probative value and unfair prejudice. *See Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006). All testimony and physical evidence will likely be prejudicial to one party or the other. *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996). It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value, in other words, the evidence is unfairly prejudicial, that Rule 403 is applicable. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009); *Id*.

When conducting a Rule 403 balancing test, courts should consider: (i) the evidence's probative force; (ii) the proponent's need for the evidence; (iii) the evidence's potential to suggest a decision on an improper basis; (iv) the evidence's tendency to distract the jury from the main issues; (v) any tendency for the jury to give the evidence undue weight because it has not been fully equipped to evaluate the evidence's probative force; and (vi) the likelihood that presenting the evidence will consume an inordinate amount of time. *See Gigliobianco v. State*, 210 S.W.3d 637, 641-642 (Tex. Crim. App. 2006).

Because Austin complains on appeal only that the probative value of the extraneous offense evidence was outweighed by the danger of unfair prejudice, he limits

his discussion to factors (i), (ii), (iii), and (vi). We, likewise, confine our review to those same factors.

### *Review*

#### *Probative Force*

Evidence of a separate sexual offense against a child admitted under article 38.37 is generally probative of a defendant's character or propensity to commit sexual assaults on children. *See Bradshaw*, 466 S.W.3d at 883. Austin initially asserts, however, that brother's testimony and Exhibit 26 are too remote to be probative. Remoteness can significantly lessen the probative value of extraneous-offense evidence. *See Gaytan v. State*, 331 S.W.3d 218, 226 (Tex. App.—Austin 2011, pet. ref'd); *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). However, remoteness alone is not sufficient to render an extraneous offense excludable under Rule 403. *Gaytan*, 331 S.W.3d at 226; *Price*, 594 S.W.3d at 680 n.6. Rather, it is but one aspect of an offense's probativeness the trial court is to consider along with the other factors in the Rule 403 analysis. *Gaytan*, 331 S.W.3d at 226-227.

We agree that the abuse against brother and the offense documented in Exhibit 26 were remote in time to Austin's trial. However, they are not remote to the dates of the abuse against the victim. The indictment in this case states the abuse against the victim occurred in 1991. Testimony regarding the abuse against brother suggested the abuse began in 1990 or 1991, and the indictment in Exhibit 26 alleged the indecency offense occurred in 1997. We do not believe, under these circumstances, that remoteness, if any, of the extraneous offenses rendered the probative value of this evidence so weak as to

render the evidence inadmissible under Rule 403. *See Harty v. State*, 552 S.W.3d 928, 935 (Tex. App.—Texarkana 2018, no pet.).

Austin also argues that the probative value of brother's testimony is weakened by the strength of the victim's testimony. However, no medical or physical evidence corroborated the victim's testimony, and there were no other witnesses to the offense. Without brother's testimony, the State's case would have been confined to the victim's word against Austin's. The victim's credibility was a central issue in the case. Because sexual assault cases frequently present such scenarios, Rule 403 should be used sparingly to exclude evidence "that might bear on the credibility of either the defendant or complainant in such 'he said, she said' cases." *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009).

Austin further argues the indecency offense reflected in Exhibit 26 lacked meaningful distinctive similarities to be probative. However, the indecency offense confirmed what the victim and brother said about how some of the instance of abuse against them began—as young boys being awakened in their sleep by Austin touching them.

### *Improper basis*

Austin asserts the extraneous offense evidence was inherently inflammatory, especially when Exhibit 26 was admitted at the end of the State's case and when the State emphasized brother's testimony during both parts of its argument to the jury. Austin is correct that Exhibit 26 was introduced into evidence at the end of the State's case. However, there was no testimony about the impact of the exhibit. The sponsoring

witness offered no interpretation of the documents included in the exhibit or elaborated upon the facts of the offense. Regarding brother's testimony, no special emphasis was placed on it during the State's argument. The State generally reminded the jury of brother's testimony and informed them that they could take the testimony into consideration if they believed it beyond a reasonable doubt. The State also generally explained why brother remembered more of what happened after the initial disclosure and that brother did not want to testify, but did, and told the truth.

Further, any potential that the evidence had to suggest the jury decided the case on an improper basis was negated by the fact that Exhibit 26 and brother's testimony encompassed actions that were no more serious than the allegations forming the basis for the charged allegation. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd). The trial court also provided limiting instructions in the court's charge regarding both extraneous offenses.

*Time*

Both parties agree, as do we, that the extraneous offense evidence did not consume an inordinate amount of time during the trial.

*Need for the Evidence*

Austin asserts the State did not need the extraneous evidence, especially if the State was permitted to introduce one extraneous offense or the other. As we noted earlier, no medical or physical evidence corroborated the victim's testimony, there were no other witnesses to the offense, and without brother's testimony, the State's case would have been confined to the victim's word against Austin's. The victim's credibility was a central

issue in the case. Because sexual assault cases frequently present such scenarios, Rule 403 should be used sparingly to exclude evidence "that might bear on the credibility of either the defendant or complainant in such 'he said, she said' cases." *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009). Further, fabrication was part of a defensive theory. Specifically, Austin contended that the victim enlisted brother to help set up Austin to get a few years shaved off of the victim's prison time for his then-pending charge for methamphetamine possession. Thus, the State had a need to introduce the extraneous offenses. *See Moses*, 105 S.W.3d at 626 (noting that rebuttal of a defensive theory is one of the permissible purposes for which extraneous-offense evidence may be admitted).

### *Conclusion*

After our review of the record, we cannot say the trial court abused its discretion in determining the probative value of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice.

Accordingly, Austin's first and second issues are overruled.

## MOTION FOR MISTRIAL

In his third and fourth issues, Austin contends the trial court abused its discretion when the trial court denied Austin's requests for a mistrial after the trial court sustained objections to argument by the State in both the guilt/innocence and punishment phases of the trial.

In Issue III, the offending statement occurred during argument on punishment. D.V. was the victim who was the subject of Exhibit 26. During argument, the prosecutor

stated, "[D.V.] was prior - on a prior occasion molested." Austin objected, saying there was no evidence in the record that DV had been "molested" a second time by Austin. As the prosecutor was responding that she thought there was testimony about "that," the trial court attempted to stop the response. Austin's objection was sustained, and upon request, the jury was instructed to disregard the prosecutor's last statement. Austin moved for a mistrial which the trial court denied.

In Issue IV, Austin claims the State struck at Austin over the shoulders of counsel by stating in argument on guilt/innocence that,

> [Counsel] has subpoena power. And he's right. True enough, we have the burden of proof in all these cases; but you as a jury get to consider and weigh the fact that when he does bother to get out of his chair and call a witness-

The trial court sustained Austin's objection as it was being raised. The jury was told to disregard the prosecutor's statement, and the trial court denied Austin's motion for mistrial.

*Law*

When the trial court sustains a defendant's objection, grants a requested instruction to disregard, but denies a motion for mistrial, the issue is whether the refusal to grant the mistrial was an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). The question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis. *Id*. at 77. Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required. *Id*. Thus, regardless of whether the mistrial was requested during argument

on punishment or on guilt/innocence, we will address these two issues by applying the three-factor balancing test articulated in *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998): (1) severity of the misconduct; (2) measures adopted to cure any harm from the misconduct; and (3) certainty of conviction absent the misconduct. *See Hawkins*, 135 S.W.3d at 77 (punishment argument); *see also Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (guilt/innocence argument).

### *Prior Molestation of D.V.*

Although Austin claims that the State's argument served no legitimate purpose and injected new facts harmful to Austin by unsworn testimony outside the record, the investigator for the offense committed against D.V. was asked by Austin's counsel at punishment whether "there was a situation where D.[V]. woke up, … – said that [Austin] touched him over the clothing then went back to sleep and then later same thing?" The investigator replied, "yes." That exchange could have been interpreted as evidence Austin touched D.V. more than one time. Further, nothing more was said about this situation. Thus, the misconduct did not appear to be severe. The trial court promptly gave an instruction to the jury to disregard the State's statement, which the jury was presumed to follow.

Moreover, after a review of the punishment record, we find that the punishment assessed was just as certain absent the statement for several reasons. In addition to the evidence introduced at guilt/innocence, there was evidence at punishment that Austin had entered and remained in a child safety zone while he was on deferred adjudication, for which his probation was extended one year, and that his probation officer was

concerned Austin still had issues with viewing pornography during his probationary period. There was also evidence that Austin was befriending teenagers—buying clothing and alcohol for them, letting them spend the night in his parents' vacant house, picking them up from school—after he was released from deferred adjudication. And although Austin argued the sentence the jury gave him, 63 years in prison, was a consequence of the State's argument, the jury actually sentenced Austin to less than what the State had requested, life in prison.

Balancing the required factors, we find that the trial court did not abuse its discretion by denying Austin's motion for mistrial due to improper argument by the State at the punishment phase of Austin's trial. Austin's third issue is overruled.

### *Striking over the Shoulders*

In this issue, Austin contends the State's argument was an insupportable attack on counsel's efforts to defend Austin and because the evidence of Austin's guilt was not overwhelming, the harmful effects of the State's argument were not cured by the trial court's instruction to disregard. We agree the State's comment was inappropriate; however, taken in context, Austin's counsel had argued about how the State had the burden of proof and did not talk to or bring all the witnesses it could have. The trial court promptly instructed the jury to disregard the statement by the State, which, again, the jury was presumed to have followed. After the denial of the motion for mistrial, the State more appropriately responded to Austin's argument by informing the jury that it was entitled to consider who the defense chose not to call as well. The total evidence supporting Austin's conviction, including extraneous offense evidence regarding similar

abuse to the victim's brother and a guilty plea to indecency with a child charge, absent any alleged improper misconduct, was overwhelming. Thus, the State's comment did little, if anything, to increase the certainty of Austin's conviction.

Accordingly, balancing the required factors, we find that the trial court did not abuse its discretion in denying Austin's motion for mistrial due to improper argument by the State at the guilt/innocence phase of Austin's trial. Austin's fourth issue is overruled.

**CONCLUSION**

Having overruled each of Austin's issues on appeal, we affirm the trial court's judgment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed May 18, 2022
Do not publish
[CRPM]

