**Opinion issued February 19, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00299-CR

————————————

**ROBERT EARL SCHIELE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 411th District Court**
**Polk County, Texas**
**Trial Court Case No. 22467**

---

## MEMORANDUM OPINION

Appellant Robert Earl Schiele was charged by indictment with felony

arson.[1]  The indictment's enhancement paragraphs alleged that Schiele previously

---

[1]  On March 26, 2013, the Texas Supreme Court ordered this appeal transferred from the Court of Appeals for the Ninth District of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013) (authorizing transfer of cases).  We are unaware of any

had been convicted of felony burglary and felony retaliation. A jury rejected Schiele's theory of the case—that the grease fire began accidentally—and found Schiele guilty of the charged offense. After finding the enhancement allegations true, the jury assessed punishment at life in prison. On appeal, Schiele contends that the evidence at trial was legally insufficient to support his conviction. He also contends that the trial court erred by (1) admitting, during the guilt/innocence phase, evidence that he was on parole at the time he committed the charged offense and had previously violated parole conditions and had his parole revoked, and (2) admitting, during the punishment phase, evidence of a prior conviction for injury to a child. We affirm.

## Background

On February 7, 2012, the mobile home that Schiele and his family were renting caught fire and burned to the point that it was not salvageable. Marian Buffington, a Children's Protective Services caseworker, testified that she believed she smelled something burning when she made an unannounced visit to the home on the day of the fire. She arrived at 10:21 a.m. but left shortly thereafter because no one answered her knock on the door. She testified that she smelled something burning as she walked back toward her car and away from the home. But

conflict between the precedent of the Court of Appeals of the Ninth District and that of this Court on any relevant issues. *See* TEX. R. APP. P. 41.3.

Buffington did not call 911 because she returned to the front door to check the smell and could not smell anything while standing there.

Approximately three hours later, Jack Ray, a passerby, drove by the home and saw smoke and flames. Ray called 911 to report the fire at 1:29 p.m. He testified that he had driven by the home 15 minutes earlier and had not seen any evidence of fire at that time.

Officer T. Binford of the Polk County Sheriff's Department testified that he was dispatched to the scene around 1:32 p.m. When he arrived five minutes later, Binford looked in a window and saw "a small fire in the kitchen area" that "appeared to be on the top of the stove area." He testified that the house was "filled with smoke" and that no one was inside.

Schiele had not called 911 to report the fire, but he did call Krystal Philp, his parole officer, half an hour after Ray reported the fire. At about 1:58 p.m. on February 7, Schiele left a voicemail for Philp explaining that he had failed to report that morning due to a fire at home. Philp returned Schiele's call that afternoon and made a recording of their conversation, which was played for the jury at trial. In it, Schiele told Philp that his home caught fire that morning. Schiele told Philp that he had put out the fire and then left to meet Philp in Huntsville, as she had instructed the day before, but that he failed to make the meeting because he had to return home when he learned the fire had re-ignited. Schiele told Philp that he had

3

inhaled smoke and left the home and that he was at a nearby bridge. Earlier that day, Philp had requested a warrant for Schiele's arrest based on his failure to report as instructed.

Captain R. Childers of the Polk County Sheriff's Department testified that he arrived at the bridge after another officer had arrested Schiele pursuant to the arrest warrant. Childers testified that Schiele's wife, Bessie Lucas, and two children, were at the bridge with Schiele and the arresting officer. Lucas's bag contained a red expandable folder containing important family documents.

Once Childers and Schiele arrived at the police station, Childers conducted a videotaped interview of Schiele, which was played for the jury. According to Schiele, he was frying lunch—hot pockets, corn dogs, and French fries—in a skillet on the electric stove when a grease fire started. Schiele told Childers that a cabinet caught fire, and that his children ran outside as he fought the fire. Schiele said that he only left the house after he thought that he had extinguished the fire. Schiele, Lucas, and the children then walked to a nearby bridge where they waited for the smoke to clear out of the home. Although Schiele heard sirens within an hour after he left the home, he did not return because he did not "want to deal with the landlady." Schiele surmised that the fire must have blazed back up after he left.

4

During the same recorded interview, Schiele admitted to Childers that Schiele had falsely told Philp over the phone that the fire occurred in the morning. He said that he used the fire as his "excuse" for not reporting to Philp as instructed. Schiele also admitted to Childers that Philp had told him that an arrest warrant would issue if he did report to her in the meeting.

Philp testified that Schiele had failed to report to her on February 6, the day before the fire. When Philp asked Schiele to explain his failure to report, Schiele told her that he left home to go to work, but his boss's truck broke down, and that his other attempts to find a ride to meet Philp were unsuccessful. Philp told Schiele that the records from his electronic monitor showed something different—that Schiele never left home on February 6. Schiele responded that the monitor must not have been working properly. Philp ended the conversation by telling Schiele to report to her in Huntsville at 10:00 a.m. the next day, February 7. She told Schiele that she would request a warrant for his arrest if he did not report to her on February 7 at 10 a.m. She also told him that she would request a warrant for his arrest if further investigation of his electronic monitor records confirmed that Schiele was falsely claiming to have left home on February 6. When Schiele failed to report on February 7 as instructed, Philp submitted a violation report, and a warrant issued around 1:11 p.m. that day.

Jay Barbee, Polk County Fire Marshal and arson investigator, investigated the fire. Barbee testified that the origin of the fire was a pot that had been on the electric stove. Barbee estimated that the burner had to have been on for 30 to 45 to melt the sides of the pot. Barbee testified that he could not determine whether the burner had been left on intentionally and that there was no evidence that an accelerant was used to start the fire.

James Booker, Schiele's parole officer at the time of trial, sponsored the results of Schiele's drug test, which showed that Schiele tested positive for methamphetamine two days after the fire. He also sponsored a document in which Schiele admitted in writing that he used methamphetamine on February 6, the day before the fire.

Booker also told the jury about the records obtained from Schiele's electronic monitoring system. They showed that Schiele's home monitor was unplugged at 8:05 a.m. on February 7, the day of the fire. The system nevertheless continued to monitor Schiele's entry and exit from his home due to a battery backup, about which officers do not tell parolees. Booker testified that the records showed that, on the day of the fire, Schiele left home at 9:29 a.m., returned at 12:51 p.m., and left again at 1:14 p.m, approximately 15 minutes before Ray reported the fire to 911.

Sandra Henderson, who lived nearby, testified that she was the owner of the home, and had rented it to Schiele's wife, Lucas, since September 2011. Henderson testified that Lucas complained about bedbugs and roaches in January 2012. Henderson was willing to pay for an exterminator to treat the home and told Lucas that they needed to schedule the extermination for a time when no one would be home, but she never heard anything else about it.

Although Henderson occasionally had helped Lucas by caring for her children, driving her to life and career skills courses, and helping her organize her important documents into the red folder, Henderson ultimately posted an eviction notice around February 3, 2012, for unpaid rent. Henderson testified that on February 7, the day of the fire, she saw Lucas and her two children walking away from the home at 9:00 a.m., with Lucas carrying a large bag.

## Sufficiency of Evidence

In his first issue, Schiele contends that there was legally insufficient evidence to support his conviction because no direct evidence shows that he intentionally set the fire, and he presented evidence suggesting the fire was an accident and was extinguished when he left the home.

### A.     Standard of Review

"When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on

that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781 (1979)). "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Id.* Juries are permitted to draw reasonable inferences from facts as long as each is supported by the evidence presented at trial. *Id.* We determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* at 526 (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). We presume the jury resolved conflicting inferences in favor of the verdict and defer to that determination. *Id.* The standard is the same for both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).

## B. Applicable Law

As relevant in this case, a person commits arson if he "starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage any building, habitation, or vehicle knowing that it is located on property belonging to another." TEX. PENAL CODE ANN. § 28.02(a)(2)(D) (West 2011). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his

conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West 2011); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

**C.    Analysis**

There was no dispute that Schiele's actions caused the grease fire in the mobile home—the central issue in the case was whether he committed the actions with the requisite intent.    Intent is most often proven through circumstantial evidence. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *overruled on other grounds*, *Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992); *Dominguez v. State*, 125 S.W.3d 755, 761 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).    And a jury may infer intent from any facts that tend to prove its existence, such as the acts, words, and conduct of the defendant. *Hernandez*, 819 S.W.2d at 810; *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980); *Dominguez*, 125 S.W.3d at 761.

Here, the jury rationally could have inferred that Schiele intended to cause the fire from several of his actions before and immediately after the fire.  First, the jury heard Schiele admit to Childers in the interview that Schiele did not report the fire to 911 despite the fact that the fire was significant enough to spread from the stove to a kitchen cabinet and cause a sore throat from smoke inhalation.  Second, the jury heard and saw Schiele admit in the interview that he left the home and did

not return, even after hearing sirens approach. The reason he proffered for not returning to the scene was that he did not want to "deal with" Henderson. Third, the jury could have rationally inferred that Schiele attempted to conceal his whereabouts on the day of the fire based on evidence that his electronic monitor was unplugged shortly after 8:00 a.m. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (attempts to conceal incriminating evidence and implausible explanations to the police are probative of wrongful conduct and are circumstances of guilt); *Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983) (conduct of a defendant subsequent to the alleged commission of a crime that indicates a consciousness of guilt is a circumstance tending to prove that the defendant committed the act with which he is charged); *Ramirez v. State*, No. 14-07-00060-CR, 2008 WL 3931403, at *4 n.5 (Tex. App.—Houston [14th Dist.] Aug. 21, 2008, pet. ref'd) (mem. op., not designated for publication) ("Leaving the scene of a crime indicates a consciousness of guilt.").

The jury likewise rationally could have inferred intent from some of Schiele's words. In his interview with Childers, Schiele admitted that he falsely told Philps that the fire started in the morning, *before* Schiele purported to have left for Huntsville for his 10:00 a.m. meeting with Philp. Schiele admitted to Childers that this was false, because, according to the account that Schiele gave Childers, the fire started at lunch time. Schiele also made a key admission about the *reason*

10

he told Philp this lie: he was trying to use the fire as an excuse for failing to report to her in Huntsville. This admission could have been damaging in the jury's eyes because it dovetailed with the State's theory of motive: Schiele intentionally set the fire to avoid having to report to Philp because he knew that reporting to Philp would result in his failing a drug test (because he had used methamphetamine on February 6) and having his probation revoked. *See Merritt*, 368 S.W.3d at 526 (while not an element, motive can be a circumstance indicative of guilt); *Temple v. State*, 342 S.W.3d 572, 588 (Tex. App.—Houston [14th Dist.] 2010) (lying is a circumstance of guilt), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013).

Finally, Schiele's account of when he left the home likewise could have been viewed by the jury as words tending to show intent. Schiele told Childers that approximately one hour passed between the time he and his family left home and the time he heard sirens. But his monitor showed that he left only 14 minutes before Ray reported the fire, and the evidence showed that authorities responded to the scene within 9 minutes of Ray's report. Based on this evidence, the jury rationally could have inferred that Schiele was untruthful and attempting to conceal his whereabouts at the time of the fire. *See Merritt*, 368 S.W.3d at 527 (considering evidence that appellant's recollection of activities on evening of arson was contradicted by other evidence in sufficiency analysis).

Schiele argues that the evidence was insufficient because Barbee testified that he could not determine whether the fire was set intentionally, the State's case was based only upon circumstantial evidence, and there was some evidence that he started the fire accidentally. But circumstantial evidence is just as probative as direct evidence and, in circumstantial cases, "it is not necessary that every fact and circumstance 'point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.'" *See Temple*, 390 S.W.3d at 359 (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)). Likewise, while Schiele correctly points out that there is some evidence that the fire was accidental, we rely on the jury to resolve conflicts in the evidence, and this is especially so in the context of credibility determinations. *See Lancon v. Stat*e, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (we afford almost complete deference to jury's determinations of credibility); *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (appellate courts resolve any inconsistencies in the evidence in favor of the verdict).

Viewing the evidence in the light most favorable to the verdict, as we must, we conclude that a rational jury could have convicted Schiele of arson. Accordingly, we hold that the evidence was legally sufficient to support the judgment. *See Orr v. State*, 306 S.W.3d 380, 394 (Tex. App.—Fort Worth 2010,

no pet.) (evidence sufficient to support conviction for arson where appellant had motive, was present at the time of the fire, and gave implausible explanations about fire); *Fitts v. State*, 982 S.W.2d 175, 186 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (presence at the scene before the fire coupled with motive and opportunity is evidence tending to establish arson); *Krebsbach v. State*, 962 S.W.2d 728, 734 (Tex. App.—Amarillo 1998, pet. ref'd) (evidence sufficient to support murder conviction where appellant had motive to set the fire, was present in home as fire began, and made inconsistent statements about how she discovered fire).

We overrule Schiele's first issue.

### Evidentiary Issues in Guilt/Innocence

In his second through ninth issues, Schiele contends that the trial court abused its discretion in admitting evidence of several of Schiele's bad acts. Specifically, Schiele argues that the trial court erred in admitting evidence that Schiele (1) was on parole, (2) failed to report to his parole officer the day before the fire and the day of the fire, (3) violated his parole by using a controlled substance the day before the fire and by disconnecting his electronic monitoring device the day of the fire, (4) lied to his parole officer about why he failed to report the day before the fire and the day of the fire, (5) was required to attend anger

management classes, and (6) had violated parole obligations and had his parole revoked before February 6, 2012.

## A. Standard of Review

We review a trial court's evidentiary rulings for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We will not reverse a trial court's ruling on evidentiary matters unless the decision was outside the zone of reasonable disagreement. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). If the trial court's ruling can be justified on any theory of law applicable to that ruling, the ruling will not be disturbed. *De La Paz*, 279 S.W.3d at 344 (citing *Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. 1982) ("When a trial court's ruling on the admission of evidence is correct, although giving a wrong or insufficient reason, this Court will not reverse if the evidence is admissible for any reason.")).

## B. Applicable Law

Evidence of extraneous crimes, wrongs, or acts is not admissible at the guilt-innocence phase "to prove the character of a person in order to show action in conformity therewith" but is admissible to prove other matters, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" if the accused is given reasonable notice of the State's intent to introduce the evidence. TEX. R. EVID. 404(b) (extraneous evidence must have

14

probative value beyond character conformity to be admissible). The Court of Criminal Appeals has held that evidence of an appellant's parole status is properly admitted under Rule 404(b) to show motive. *Powell v. State*, 189 S.W.3d 285, 289 (Tex. Crim. App. 2006) (evidence defendant was on parole was admissible under Rule 404(b) for purpose of establishing defendant's motive for evading arrest). Further, rebuttal of a defensive theory is also "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

"However, even if the evidence is relevant, and the purpose for which it is being offered is permissible under Rule 404(b), it may still be excluded by the trial court under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (en banc)). Under a Rule 403 analysis, we consider: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already

admitted." *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The trial court is presumed to have conducted the proper balancing test if it overrules a 403 objection, regardless of whether it conducted the test on the record. *See Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997).

**C.    Analysis**

Here, the State offered the challenged evidence to prove that Schiele had a motive to and did set the fire intentionally. The fact that Schiele was on parole, failed to report to his parole officer on February 6 and February 7, was not truthful about why he failed to report, tested positive for methamphetamine on February 9, which he admitted to using on February 6, and disconnected his electronic monitor on February 7 are all circumstances that demonstrate that Schiele had a motive to set the fire. *See Merritt*, 368 S.W.3d at 527 (while not an element, motive can be a circumstance indicative of guilt). Accordingly, the trial court did not err in concluding that this evidence was probative and admissible under Rule 404(b). *See* TEX. R. EVID. 404(b); *Powell*, 189 S.W.3d at 289 (evidence of appellant's parole was admissible to show motive for evading arrest); *Valdez v. State,* 776 S.W.2d 162, 168 (Tex. Crim. App. 1989) (evidence of an outstanding federal parole warrant was admissible on the issue of defendant's motive for shooting a police officer).

16

We also conclude that the trial court did not abuse its discretion in overruling Schiele's Rule 403 objection with respect to some of the challenged evidence. Specifically, evidence that Schiele was on parole, failed to report to Philp on February 6 and February 7, used methamphetamine on February 6, disconnected his electronic monitor on February 7, and lied to Philp about why he failed to report was admissible under *Gigliobianco*.

The first two factors—the probative value of the evidence and the State's need for the evidence—weigh strongly in favor of admissibility. The evidence that Schiele was on parole at the time of the offense, failed to report, used methamphetamine on February 6, disconnected his electronic monitor, and lied about why he failed to report on February 6 is probative of motive and intent. The State needed the evidence to demonstrate why Schiele would have deliberately set his home on fire. *See Powell*, 189 S.W.3d at 289 ("there was reason to believe that the State had a significant need for the evidence" that appellant was on parole to show motive and contradict other evidence).

Under the third factor, we examine the unfair prejudice, that is, the tendency of the evidence to suggest decision on an improper basis. *Gigliobianco*, 210 S.W.3d at 641. Evidence might have this tendency "if it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Id.* Here, the evidence about Schiele's parole likely harmed Schiele,

17

but the risk of *unfair* prejudice was minimized somewhat because the jury did not learn the offense for which Schiele was on parole. *See Powell*, 189 S.W.3d at 289 (risk of undue prejudice was minimized by the fact that jury was not told what crime led to parole status). This factor weighs against admissibility.

In considering the fourth and sixth factors, we examine the tendency of the evidence to confuse or distract the jury from the main issues and the time required to develop the evidence. *Gigliobianco*, 210 S.W.3d at 641. "Evidence that consumes an inordinate amount of time to present or answer, for example, might tend to confuse or distract the jury from the main issues." *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). Here, the amount of time the State devoted to developing the evidence was not insignificant. The State presented the evidence through the live testimony of four witnesses—Schiele's parole officers, Booker and Philp, the Polk County Sheriff's Office dispatcher, Terry Valka, and the officer who conducted Schiele's interview, Captain Childers. The witnesses' testimony about Schiele's parole spanned approximately 50 pages of the 118-page reporter's record of the guilt and innocence phase of the trial. The State also presented a recording of Schiele's eight-minute phone call with Philp and the interview by Childers. The interview video lasted approximately 24 minutes and the portions related to the parole lasted less than five minutes. Because a significant portion of the evidence related to the challenged evidence regarding

parole, we conclude that the fourth and sixth factors weigh against admissibility. *Cf. Blackwell v. State*, 193 S.W.3d 1, 18 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (factor neutral and favored neither admissibility nor exclusion of evidence where four witnesses' testimony of extraneous offenses was not "unduly lengthy").

Under the fifth factor, we weigh any tendency of the evidence to be given undue weight by a jury that has not been properly equipped to evaluate the probative force of the evidence. *Gigliobianco*, 210 S.W.3d at 641. Here, the charge contained a limiting instruction.[2] Absent evidence to the contrary, a jury is presumed to follow the instruction set forth in the court's charge. *Herrera v. State*, 11 S.W.3d 412, 415–16 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). Further, the testimony relating to Schiele's parole, interview video, and phone call recording were not scientific or technical in nature. Thus, "nothing suggests that the jury was not equipped to evaluate the probative force" of the evidence, and we conclude this factor weighs in favor of admissibility. *See Moreno v. State*, 409 S.W.3d 723, 731 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (fifth factor

---

[2] The charge instructed: "[E]ven if you find that the State has proven, beyond a reasonable doubt, the defendant's guilt of these other offenses, wrongs, or acts, if any, you may only consider such evidence as evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, in relation to the offense for which defendant is on trial or to rebut a defensive theory of the case, and you may not consider these offenses, wrongs, or acts, if any, for any other purpose."

19

weighs in favor of admissibility where evidence was not technical or scientific in nature and was "comprehensible by laypeople").

In support of his argument that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice under Rule 403, Schiele cites *Powell v. State*, 151 S.W.3d 646, 650–54 (Tex. App.—Waco 2004), *rev'd*, 189 S.W.3d 285. But the Court of Criminal appeals reversed that Waco Court of Appeals decision as to the Rule 403 balancing test and held that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See Powell*, 189 S.W.3d at 287–90. Accordingly, *Powell* does not support Schiele's argument. *See id.*

We conclude that three of the *Gigliobianco* factors weigh in favor of admissibility while three weigh against it. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the following challenged evidence: that Schiele was on parole, failed to report to Philp on February 6 and February 7, used methamphetamine on February 6, disconnected his electronic monitoring device on February 7, and lied to Philp about why he failed to report on February 6 and February 7. *See Powell*, 189 S.W.3d at 289 (probative value of evidence was not substantially outweighed by danger of unfair prejudice where jury was not informed of crime for which appellant was on parole and State had significant need

20

for evidence); *Moses*, 105 S.W.3d at 627 (trial court's admission of extraneous offense evidence is reviewed for abuse of discretion).

Our analysis of the remaining challenged evidence—that Schiele missed an anger management class on February 6 and had his parole revoked before February 6, 2012—is different. With respect to this evidence, we conclude that even if it was error to admit it, the error would have been harmless in light of the other admissible evidence relating to parole discussed above.

The jury considered evidence that Schiele was on parole at the time of the fire, failed to report to Philp on February 6 and February 7, used methamphetamine on February 6, disconnected his electronic monitoring device on February 7, and lied to Philp about why he failed to report on February 6 and February 7. We have held that the admission of this evidence was not an abuse of discretion. In light of this other properly admitted evidence relating to parole, it is unlikely that the additional fact that Schiele missed an anger management class and previously had his parole revoked would impact the jury's decision. This is particularly true in light of Philp's direct testimony that she warned Philp on February 6 that failing to report on February 7 would lead her to request an arrest warrant. *See Davis v. State*, 203 S.W.3d 845, 853 (Tex. Crim. App. 2006) (appellate court must determine whether erroneous admission of inadmissible hearsay "moved the jury from a state of non-persuasion to one of persuasion of a particular issue"); *Motilla*

*v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (harmless error if jury's decision likely was not adversely affected by the error); *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000) (reviewing court considers probable impact of error on jury in light of existence of other evidence).

We overrule Schiele's second, third, fourth, fifth, sixth, seventh, eighth, and ninth issues.

## Admissibility of Prior Conviction in Punishment Phase

In his tenth issue, Schiele contends that the trial court erred in admitting, during the punishment phase, evidence of a prior conviction for injury to a child because the State failed to properly link the conviction to Schiele.

### A. Standard of Review and Applicable Law

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) the prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). "No specific document or mode of proof is required to prove these two elements." *Id.* "There is no 'best evidence' rule in Texas that requires the fact of a prior conviction be proven with any document, much less any specific document." *Id.* The State may prove these two elements by documentary proof, such as a judgment, that contains sufficient information to establish both the

existence of a prior conviction and the defendant's identity as the person convicted. *Id.* at 922.

The trier of fact considers the totality of the evidence admitted and attempts to fit the evidentiary pieces of the puzzle together, weighing each piece's credibility. *Id.* at 923. "Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle." *Id.* If the two necessary elements "can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction." *Id.*

## B. Analysis

During the punishment phase, the State offered exhibits to prove its enhancement allegations—a prior conviction for the felony offenses of burglary and retaliation—as well as to prove Schiele's prior conviction for injury to a child in Oklahoma. In support of Schiele's prior conviction for injury to a child, the State offered: (1) a copy of the case summary, (2) a copy of the "plea of guilty summary of facts," and (3) a copy of the judgment.

Schiele objected and argued that the copy of the case summary did not contain a fingerprint or thumbprint, the plea record was not a certified copy and

contained no thumbprint, and that the copy of the judgment was not a certified copy, was not a public record, and contained no thumbprint.

But "[n]o specific document or mode of proof is required to prove these two elements," *see Flowers*, 220 S.W.3d at 921, and we conclude that the trial court did not err in admitting the evidence about which Schiele complains. The copy of the case summary for the injury to a child case contains Schiele's name, date of arrest, charged offense, judicial cause number, and disposition. The plea record contains Schiele's name, birth date, the same judicial cause number as the case summary, and the last four digits of Schiele's social security number. The judgment contains Schiele's name, birth date, the same judicial cause number as the case summary and plea record, and the same last four digits of Schiele's social security number as the plea record. Further, Lucas, Schiele's wife, testified that Schiele was arrested for injury to a child in Oklahoma and that the plea record states the charged offense and the date of the arrest, which matches the date on the case summary. Additionally, the trial court admitted penitentiary packets ("pen packs") containing documents from the Texas Department of Criminal Justice. The pen packs include documents relating to Schiele's other prior convictions and include Schiele's name and birth date, which match the case summary, plea record, and judgment for his injury to a child conviction. Based on the totality of the evidence, we hold that the State produced evidence from which the jury rationally could link Schiele to the

injury to a child conviction beyond a reasonable doubt. *See Flowers*, 220 S.W.3d at 921 (certified copy of computer printout from county clerk setting out prior conviction with cause number and appellant's name, date of birth, address, and social security number matching exhibit containing appellant's official driver's license record was sufficient to prove existence of appellant's prior conviction); *Orsag v. State*, 312 S.W.3d 105, 115 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (factfinder considers totality of evidence to determine whether State proved prior conviction beyond a reasonable doubt). Accordingly, the evidence is legally sufficient to prove the prior convictions and enhancement allegation.

We overrule Schiele's tenth issue.

### Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).